**In re SEALED CASE (JUVENILE TRANSFER).**

No. 89–3126.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 8, 1989.

Decided Jan. 9, 1990.

Elizabeth G. Taylor (appointed by this Court), with whom James W. Klein was on the brief for appellant.

Linda L. Mullen, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher and Thomas J. Tourish, Jr., Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.

Before WALD, Chief Judge, and EDWARDS and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Chief Judge WALD.

WALD, Chief Judge:

H.S., Jr., a juvenile, was charged with three counts of distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1). In order to criminally prosecute him, the government successfully moved to transfer H.S., Jr. from juvenile to adult court, pursuant to § 5032 of the Juvenile Justice and Delinquency Prevention Act, 18 U.S.C. §§ 5031 *et seq.* ("the Act"). This is an appeal from the transfer decision of the district judge.

As a general matter, a juvenile charged under the Act may be transferred from juvenile to adult court for criminal prosecution in only two instances: in one, not relevant here, criminal prosecution is mandatory where a juvenile, 16 years or older, is charged with certain narcotics offenses or violent offenses and has previously been found guilty of such an offense; in the other, which is relevant here, criminal prosecution is allowed where a juvenile, 15 years or older, is charged with a "crime of violence" or certain narcotics offenses including violations of 21 U.S.C. § 841(a)(1), and the district court finds after a hearing, on evidence pertaining to specific categories set out in 18 U.S.C. § 5032, that criminal prosecution would be in "the interest of justice." One of those categories is "the nature of the alleged offense."

In evaluating the nature of H.S., Jr.'s alleged offense, the judge considered evidence of crimes proffered by the government other than the § 841 violations with which it had charged him. Because Congress did not intend "the nature of the alleged offense" to encompass allegations of crimes other than the one charged, we reverse the district judge's transfer decision and remand for a new hearing consistent with this opinion.

## I. BACKGROUND

As a seventeen year old, H.S., Jr. is a juvenile within the meaning of § 5031 of

the Act.[1] The government has charged him by Information with three counts of distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). The alleged acts took place in 1987 and 1988, H.S., Jr.'s 15th and 16th years.

The government moved to transfer H.S., Jr. to adult status so that it could prosecute him criminally rather than proceed against him in juvenile court. Consequently, the district court held a transfer hearing as required by "the interest of justice" transfer provision of § 5032 of the Act.[2]

Through this provision, Congress has directed courts to determine a juvenile's rehabilitative potential by making findings regarding the following factors: (1) the juvenile's age and social background; (2) the nature of the alleged offense; (3) the extent and nature of the juvenile's prior delinquency record; (4) the juvenile's present intellectual development and psychological maturity; (5) the nature of past treatment efforts and the juvenile's response to such efforts; and (6) the availability of programs designed to treat the juvenile's behavioral problems. After weighing the evidence relevant to these categories, the court either determines that the juvenile is likely to respond to rehabilitative efforts and thus denies transfer or it determines that transfer for criminal prosecution is in "the interest of justice."

At the transfer hearing, the government offered into evidence an Affidavit in Support of Arrest Warrants which characterized H.S., Jr. as a major player in a large drug conspiracy and detailed his participation in the conspiracy.[3] The government had originally charged H.S., Jr. with conspiracy to possess and to distribute cocaine in addition to the distribution charges. However, after the district judge advised the government that conspiracy is not a transferable offense under 18 U.S.C. § 5032, the government amended the Information, dropping the conspiracy charge.

Nonetheless, in the portion of the judge's opinion in which he evaluated "the nature of the alleged offense," the judge placed heavy reliance on the information contained in the Affidavit regarding the dropped conspiracy charge:

Although the charges in the Information are confined to three discrete acts of distribution of cocaine, the nature of these acts cannot be evaluated in a vacuum. According to the Affidavit in support of the warrant for H.S., Jr.'s arrest, these acts of distribution were part of a sophisticated drug conspiracy, in which H.S., Jr. is alleged to have played a significant role. In addition to these three discrete acts of distribution, the Affidavit alleges that H.S., Jr. collected the money street sellers received from cocaine sales, carried substantial quantities of cocaine to street sellers for distribution, and helped Rayful Edmond, III, the conspiracy's alleged ringleader, sell fairly substantial amounts of cocaine for significant sums of money. In addition, the Affidavit alleges that H.S., Jr. acted as an "enforcer" in the Edmond operation; he is alleged to have carried a weapon to protect Edmond's street sellers from rival drug distributors who "ventured onto [Edmond's] turf."

Opinion at 9–10 (citing Affidavit in Support of Arrest Warrants at para. 5).

## II. ANALYSIS

H.S., Jr. argues that it was improper for the judge to consider the information contained in the Affidavit pertaining to the drug conspiracy because that information

---

**1.** Section 5031 defines "juvenile" as a "person who has not attained his eighteenth birthday, or for the purpose of proceedings and disposition under this chapter for an alleged act of juvenile delinquency, a person who has not attained his twenty-first birthday."

**2.** The government argued that H.S., Jr. was subject to the mandatory transfer provision added to 18 U.S.C. § 5032 by a 1988 amendment. However, so as to avoid *ex post facto* prob-

lems—two of the three alleged violations took place in 1987—the court chose to proceed under "the interest of justice" discretionary transfer provision, which was enacted in 1974.

**3.** The government also offered a document captioned "Chronology" that, according to the government, provided a brief history of H.S., Jr.'s involvement with law enforcement officers and the juvenile justice system from 1985 through April of 1989.

goes well beyond what § 5032 of the Act permits; namely a description of "the nature of the alleged offense" for which transfer is petitioned, which in this instance is three counts of distribution of cocaine.[4] While the government contends otherwise, it first argues that we do not have jurisdiction to hear this matter on interlocutory appeal.

### A. *Jurisdiction*

■ We disagree with the government's contention that we lack jurisdiction to review appellant's claim under 28 U.S.C. § 1291, which provides for interlocutory appeals of certain "final decisions" of district courts.

In *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978), the Supreme Court summarized the threefold test established originally in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949), for determining whether a collateral order constitutes a "final decision" within the meaning of 28 U.S.C. § 1291. The Court explained that to qualify as a collateral order, reviewable before proceedings in the trial court have terminated,

> [t]he order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be *effectively* unreviewable on appeal from final judgment.

(Emphasis added.)

Both the Eleventh and Eighth Circuits have held, in cases precisely on point, that interlocutory appeals from transfer decisions made pursuant to the Act satisfy the *Coopers* test. In *United States v. C.G.*, 736 F.2d 1474, 1476 (11th Cir.1984), for example, Judge Kravitch quickly, and in our view correctly, disposed of the first two elements of the *Coopers* test, explaining that, "the matter appealed from—*i.e.*, whether appellant is to be tried as an adult in federal court—has been *finally determined* by the district court [element 1] and neither affects nor is affected by the merits [element 2]." 736 F.2d at 1476 (emphasis added).[5] Judge Kravitch went into greater detail, however, regarding the third element, offering powerful reasons as to why an appeal from a transfer decision satisfies that part of the *Coopers* test too. She explained that the

> question is not whether a given order is appealable after trial, but whether it is *effectively* reviewable. As one court put it, "[t]he third requirement of the collateral order doctrine is that the rights asserted would be lost, probably irreparably, if review were delayed until the conclusion of the proceedings in the district court." With the prosecution of a juvenile as an adult, several of the benefits and safeguards afforded by statute—*e.g.*, sealing of records and limitation of inquiries into records, protection from fingerprinting and photographing, and withholding of name and picture from news media, see 18 U.S.C. § 5038—will be irretrievably lost unless the juvenile is permitted to appeal the district court's order before conviction.[6]

*C.G.*, 736 F.2d at 1476–77 (emphasis in original, citations omitted). *See also, United States v. A.W.J.*, 804 F.2d 492 (8th Cir. 1986) (same fact pattern and reasoning); *United States v. Doe*, 871 F.2d 1248 (5th Cir.1989) (court heard appeal directly from

---

4. H.S., Jr. also argues that even if it were proper for the judge to consider information regarding the alleged drug conspiracy, the judge violated his right to due process by failing to consider evidence offered by H.S., Jr. to rebut the material in the Affidavit. Because we agree with H.S., Jr.'s primary argument that evidence of other crimes should not have been admitted, we need not reach this second objection.

5. Indeed, the government does not argue that H.S., Jr.'s appeal fails to satisfy the first two elements of *Coopers*. In its brief at 12, it

"[a]ssume[s], solely for the purposes of this analysis, that the transfer order possesses the first two characteristics of a collateral order."

6. We note, however, that pursuant to 18 U.S.C. § 5038(d), even if proceeded against as a juvenile, H.S., Jr. will be fingerprinted since he is charged with a § 841 crime. However, pursuant to 18 U.S.C. § 5038(a), those fingerprints and photographs shall be "safeguarded from disclosure to unauthorized persons." Authorized persons are then enumerated.

transfer order without addressing question of appealability); *United States v. Smith*, 851 F.2d 706 (4th Cir.1988) (denial of motion to dismiss indictment on ground that juvenile could be proceeded against only as a juvenile, pursuant to 18 U.S.C. § 5037, appealable immediately). We agree with the reasons invoked by Judge Kravitch.

The government does not attempt to distinguish *C.G.* and *A.W.J.* Rather it contends they were wrongly decided and are inconsistent with the Supreme Court's interpretation of the collateral order exception as applied in criminal cases. In support of its argument, the government relies heavily on *Midland Asphalt Corp. v. United States*, —— U.S. ——, 109 S.Ct. 1494, 1499, 103 L.Ed.2d 879 (1989). There, the Court took great pains to explain the "crucial distinction" between an explicit statutory or constitutional guarantee of the right not to be tried at all, *i.e.*, cases involving the Double Jeopardy and Speech or Debate clauses of the Constitution, and a right which can be sufficiently vindicated by acquittal at trial or on reversal of a final judgment, such as the right to an untainted grand jury indictment.[7] The government places H.S., Jr.'s case in the latter category, arguing that the statutory right he invokes is merely a right to be tried in another forum—juvenile court—not a right to be spared a trial altogether. Thus, the government contends, if H.S., Jr. is erroneously tried and convicted in adult court, he can successfully challenge its jurisdiction on appeal, thereby vindicating the right he claims was violated.

The government, however, misconstrues the nature of the Act: it does confer a right not to be tried at all on a criminal charge. The language of the Act makes this clear. Unless the government is suc-cessful in having a juvenile transferred to adult court, it must proceed to prove its charges against the juvenile in a juvenile "proceeding" (§§ 5034, 5038(a)), culminating in an adjudication of "delinquency" (§§ 5035, 5037). The juvenile proceeding, unlike criminal or civil trials, is not a public event; § 5038 of the Act scrupulously safeguards the privacy rights of juveniles both before and during the proceeding and in the dispositional phase as well.

More basically, the Act's underlying purpose is to rehabilitate, not to punish, so as "to assist youth in becoming productive members of our society [by] channel[ing] juveniles, for whom the criminal justice system is inappropriate, away from and out of the system into human problem-solving agencies and professions." S.Rep. No. 1011, 93rd Cong., 2nd Sess., 22 (1974), U.S. Code Cong. & Admin. News 1974, p. 5286. *See Fagerstrom v. United States*, 311 F.2d 717 (8th Cir.1963) (To be adjudged a juvenile delinquent and committed to custody is not to be convicted of or sentenced for a crime, and the very purpose of this chapter is to avoid prosecution of juveniles as criminals.)[8] Thus, if a juvenile is adjudged delinquent, he may not be "placed or retained in an adult jail or correctional institution in which he has regular contact with adults incarcerated because they have been convicted of a crime or are awaiting trial on criminal charges." And "[w]henever possible, the Attorney General shall commit a juvenile to a foster home or community-based facility located in or near his home or community." 18 U.S.C. § 5039.

In sum, unless transferred, a juvenile has a statutory right not to be tried as a criminal defendant. The Act is prem-

---

7. In *Midland,* the district court denied the defendant's motion to dismiss a grand jury indictment based on an alleged violation of the rule prohibiting public disclosure by government attorneys of matters occurring before the grand jury (Fed.R.Crim.P. 6(e)(2)). The Second Circuit dismissed the defendant's appeal of the order for lack of jurisdiction and the Supreme Court affirmed the dismissal.

8. *See also United States v. Frasquillo–Zomosa,* 626 F.2d 99 (9th Cir.), *cert. denied,* 449 U.S. 987, 101 S.Ct. 405, 66 L.Ed.2d 249 (1980) (purpose of this chapter is to enhance the juvenile system by removing juveniles from the ordinary criminal justice system and by providing a separate system of treatment for them); *United States v. King,* 482 F.2d 454 (6th Cir.), *cert. denied,* 414 U.S. 1076, 94 S.Ct. 594, 38 L.Ed.2d 483 (1973) (principal purpose of this chapter is not punishment in the criminal sense but rehabilitation of the youthful offender).

ised on the notion that it is in the best interest of both the juvenile and society that juveniles be insulated from the stigma associated with criminal trials, the publicity, the retributive atmosphere and threat of criminal incarceration attendant to criminal proceedings. That right would be irretrievably lost, the decision would be "effectively unreviewable," if a transferred juvenile were forced to wait until after conviction in adult court before appealing his transfer.[9]

## B. *Merits*

▮ We also agree with H.S., Jr. that in evaluating "the nature of the alleged offense" for the purpose of making a transfer decision, the judge should not have considered evidence of H.S., Jr.'s alleged involvement in a large drug conspiracy. The plain language of the phrase, the text surrounding it and principles of due process make clear that Congress did not intend § 5032's "the nature of the alleged offense" category to encompass evidence of other uncharged crimes.

First, the statutory phrase itself directing focus on "the nature of the *alleged* offense" (emphasis added), cannot plausibly be interpreted to encompass evidence of *un*alleged offenses. The government's construction of the phrase as subsuming the entire complex of arguably illegal activities in which a juvenile may be suspected to have engaged over a lengthy period of time simply does not square with the words in issue which speak only of *"the alleged offense"* (emphasis added). We do not see how anyone could fairly label H.S., Jr.'s alleged involvement in the wider drug conspiracy as part of the "nature" of the three specific distribution offenses charged by the Information. And we think it would be an even greater abuse to allow the additional discrete offenses to which the judge referred—providing street sellers with cocaine for distribution, collecting money from street sellers and acting as an "en-

forcer"—to be considered under "the nature of the alleged offense." They are quite clearly independent and as yet uncharged offenses in their own right.

Additionally, § 5032 of the Act sets out precisely which offenses precipitate transfer hearings, and conspiracy is not among them. Indeed, in recognition of this fact, prior to the hearing the government amended its original Information, which charged only conspiracy. It would be quite odd, then, to read § 5032 of the Act as authorizing consideration of conspiracy allegations under the rubric, "the nature of the alleged offense," when the Act precludes transfer where the alleged offense is itself conspiracy.

This reading of the statutory phrase at issue is also supported by the specificity of the section which incorporates it. In enacting "the interest of justice" transfer provision, Congress detailed six categories of evidence on which a judge may rely in making a transfer determination. Under § 5032 of the Act:

> Evidence of the following factors shall be considered, and findings with regard to each factor shall be made in the record, in assessing whether a transfer would be in the interest of justice: the age and social background of the juvenile; the nature of the alleged offense; the extent and nature of the juvenile's prior delinquency record; the juvenile's present intellectual development and psychological maturity; the nature of past treatment efforts and the juvenile's response to such efforts; the availability of programs designed to treat the juvenile's behavioral problems.

Obviously, Congress was concerned with limiting the kind of information that comes before a judge at a transfer hearing. That is why it went into such detail in laying down "specific criteria by which the court shall assess prospects for rehabilitation." S.Rep. No. 1011, 93rd Cong., 2nd Sess., 56 (1974), U.S.Code Cong. & Admin. News

---

**9.** Additionally, pursuant to § 5035 of the Act, a juvenile alleged to be delinquent may be detained prior to disposition only in a juvenile facility. If a juvenile had to wait for final judgment to appeal his transfer but was in the interim detained in an adult facility, § 5035's statutorily conferred right would also be irretrievably lost. *See Stack v. Boyle,* 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951) (denial of motion to reduce bail immediately appealable).

1974, p. 5320. To consider under the category, "the nature of the alleged offense," all kinds of extrinsic evidence about the juvenile's other current and past activities would thus run counter to the thrust of the entire section.

Finally, the due process principles that inform the procedures governing presentation and rebuttal of evidence offered at a transfer hearing militate toward interpreting "the nature of the alleged offense" as ruling out evidence of offenses distinct from the one charged. While a juvenile can contest evidence offered by the government for five of § 5032's six "interest of justice" categories,[10] a judge is entitled to assume that the juvenile committed the offense charged for the purpose of the transfer hearing. *United States v. Doe*, 871 F.2d at 1250 n. 1; *In re J. Anthony G.*, 690 F.Supp. 760, 763 (S.D.Ind.1988); *In Re T.W.*, 652 F.Supp. 1440, 1442 (E.D.Wisc. 1987). Such a presumption is not inconsistent with a juvenile's due process rights because the trial itself functions as a corrective for any reliance on inaccurate allegations made at the transfer stage. This is evident from the provisions in both the federal and the District of Columbia transfer statutes (both passed by Congress) mandating that a juvenile who has been transferred but found not guilty of the alleged offense be returned to juvenile status. *See* 18 U.S.C. § 5032; D.C.Code Ann. § 16–2307(h) (1989 Repl.Vol.).[11] Allegations of other uncharged criminal acts, however, will not be corrected at trial: indeed the trial court need not address them at all, yet under the government's construction of the Act, they may be what ultimately convinces the judge to transfer the juvenile. Therefore, allowing the transfer hearing judge to presume those allegations true under "the nature of the alleged offense" category would violate a juvenile's due process rights.[12]

For all these reasons, we conclude that § 5032's "the interest of justice" provision does not authorize a judge to consider evidence of other crimes in assessing "the nature of the alleged offense." [13]

We do not necessarily agree with H.S., Jr., however, that "the nature of the

---

**10.** The Supreme Court has explained that in the context of a transfer hearing, a juvenile's due process rights include the right to contest the value of the evidence offered by the government. *Kent v. United States*, 383 U.S. 541, 563, 86 S.Ct. 1045, 1058, 16 L.Ed.2d 84 (1966) ("If a decision on waiver is 'critically important' it is *equally of 'critical importance' that the material submitted to the judge ... be subjected ... to examination, criticism and refutation.*") (emphasis added). The Senate Report commentary on § 5032's "interest of justice provision" echoes *Kent* in that respect, explaining that a juvenile must be "accorded all due process rights" at a transfer hearing. S.Rep. No. 1011, 93rd Cong., 2nd Sess., 56 (1974), U.S. Code Cong. & Admin. News 1974, p. 5320.

**11.** As the legislative history of the District of Columbia statute explains:

In the opinion of the Committee, Family Division jurisdiction must be restored where the basis of transfer has been invalidated. The Committee recognized that the ultimate finding, regarding the reasonable prospects of rehabilitation, consists of a prediction as to the nature of the child's social character at the time of disposition. So too, the Committee recognized that of great revelance [sic] to this prediction is the nature of the misconduct which, at the time of the dispositional hearing, the child will have been found to have committed. Yet in the Committee's opinion, it follows logically—from the fact that the transfer finding amounts to prediction and from the assumption that the child has committed the acts alleged—that a child who is found *not* to have committed acts may well *not* suffer from the lesser prospects of rehabilitation predicted, and ought to be returned to the juvenile system.

S.Rep. No. 620, 91st Cong., 1st Sess. 12 (1969) (emphasis in original).

**12.** Of course if a juvenile were entitled to rebut the uncharged offenses at the transfer hearing, due process would not be in issue. But since, as shown above, the purpose of the Act is rehabilitation and not punishment, Congress could not have contemplated the hearing to focus on a plethora of uncharged and unproven offenses. Indeed, four of the six categories on which Congress directed a transfer judge to make findings are entirely unrelated to the juvenile's alleged violations of law.

**13.** The government argues that the judge would have transferred H.S., Jr. anyway and that therefore any error in considering the Affidavit was harmless. We, however, are not convinced that the judge would have transferred H.S., Jr. absent the Affidavit. Additionally, contrary to *the government's suggestion, we owe the judge* no deference on the propriety of his considering the Affidavit, as his authority to do so is a pure question of statutory interpretation.

alleged offense" does not encompass evidence going to any specifics of the offense, set out in the Information. For example, while the government did not include in its Information the quantity of cocaine H.S., Jr. was charged with distributing, we believe it would have been proper for the government to do so. Such information goes to the nature of the offense—distribution—by speaking to its gravity; it is consequently quite relevant to determining the prospects for H.S., Jr.'s rehabilitation.[14] Any distribution is a serious crime, but distribution of 100 kilos of cocaine is of a considerably graver *nature* than is distribution of one gram. Moreover, were the quantity of drugs distributed included in the Information, that evidence would necessarily be tested at trial.

### CONCLUSION

When Congress passed the Act in 1973, it included a provision pursuant to which a judge, after a hearing, is authorized to transfer a juvenile to adult status for criminal prosecution if the judge determines that doing so is in the "interest of justice." 18 U.S.C. § 5032. In making that determination, Congress directed courts to consider evidence relevant to six categories, each of which speaks to the juvenile's rehabilitative potential. One of those categories is "the nature of the alleged offense." That provision, however, does not authorize the judge to consider evidence of crimes with which the juvenile is not charged.

■ Because the judge in this case considered evidence offered by the government of crimes with which the government did not charge H.S., Jr., we reverse the judge's decision to transfer H.S., Jr. and remand for a new transfer hearing consistent with this opinion.

So Ordered.

**14.** Had Congress intended the transfer judge to consider nothing more than the offense as defined in the U.S.Code, it would not have included the word "nature" in the phrase, "the nature of the alleged offense."