**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 93-4959
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ROBERT DEWAYNE BILBO,

Defendant-Appellant.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

No. 93-5271
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JUVENILE-MALE,

Defendant-Appellant.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Appeal from the United States District Court
for the Eastern District of Texas

(April 13, 1994)

Before GARWOOD, SMITH and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Defendant makes this interlocutory appeal challenging the district court's order transferring the action from juvenile court to one in which he will be prosecuted as an adult. We affirm the district court.

## I.

### A.

In case number 93-4959, the Government filed a three-count sealed information against Robert Bilbo charging that: (1) on February 3, 1993, he possessed more than five grams of cocaine base (crack) with the intent to distribute it; (2) on March 17, 1993, he possessed more than five grams of crack with the intent to distribute it; and (3) on April 23, 1993, he possessed more than fifty grams of crack with the intent to distribute it. According to an affidavit supplied by Howard Jake Smith, a Sergeant with the State of Texas Department of Public Safety, Narcotics Division, Bilbo made three drug sales to undercover agents. The first and second sales listed in the information involved 22 grams of crack, while the third sale was for 62 grams.

The Government moved to transfer Bilbo for prosecution as an adult, whereupon the district court referred the case to a magistrate judge for a hearing. Following an evidentiary hearing pursuant to 18 U.S.C. § 5032, the magistrate judge issued proposed findings on five of six elements required to support transfer. The

magistrate judge found that Bilbo's age[1] indicated transfer was appropriate. Bilbo's social background, which included a troubled family life with no substantial parental influence or guidance, could be considered neutral or favoring transfer. The nature of the alleged offenses--serious drug crimes--also supported transfer. The magistrate judge further found that Bilbo's extensive prior delinquency record[2] and the nature of past treatment efforts and Bilbo's response to those efforts favored transfer. Finally, the magistrate judge determined that Bilbo's present intellectual development and psychological maturity were a neutral factor.

However, the magistrate judge recommended denying the motion to transfer because the Government failed to present any evidence on the availability of federal juvenile treatment programs, a sixth factor that must be considered under § 5032 in determining whether a transfer would be proper. The Government objected to the magistrate judge's recommendation. The district court held an evidentiary hearing on the availability of federal juvenile treatment programs. The court determined the evidence at the supplemental hearing established that better treatment

---

[1] Bilbo was born on July 31, 1975, and was at least 17 1/2 at the time of the offenses.

[2] Bilbo's first contact with the juvenile system occurred in August 1990, when he was arrested on charges of assault and of being a runaway. In May 1991, Bilbo was arrested on charges of aggravated assault. In October 1991, Bilbo was arrested on charges of disorderly conduct. In December 1991, Bilbo was arrested for driving offenses and possession of crack. Finally, in July 1992, a juvenile court adjudicated Bilbo delinquent and placed him on one year of probation based on charges of evading arrest and delivery of between 28 and 400 grams of cocaine.

3

opportunities are available for juveniles in the adult Bureau of Prisons (BOP) programs, and the court adopted the magistrate judge's proposed findings on the first five factors. Accordingly, the court granted the Government's motion, finding five of the six factors listed in § 5032 favored transfer.

B.

In case number 93-5271, the Government filed a sealed information alleging that on May 19, 1993, Bilbo possessed more than 90 grams of crack and 280 grams of cocaine powder with the intent to distribute and carried a firearm during and in relation to that drug trafficking offense. According to an affidavit from Sergeant Smith, Bilbo agreed to sell 94 grams of crack and 280 grams of cocaine powder to an undercover agent for $14,000. Officers discovered that Bilbo's companion, Tony Tolliver, possessed a firearm during the transaction. Tolliver reportedly told the officers that Bilbo gave him the firearm for protection during the transaction.

The Government again moved to transfer Bilbo for prosecution as an adult. Following a hearing, the magistrate judge recommended granting the Government's motion. The magistrate judge adopted the district court's findings from case number 93-4959 on five of the six statutory factors. Regarding the nature of the alleged offenses, the second factor, the magistrate judge found that the seriousness of the two offenses supported transfer. The district court adopted the magistrate judge's recommendation over Bilbo's

4

objection to the sufficiency of the evidence on the availability of federal juvenile programs.

Bilbo obtained a stay of prosecution in both cases pending appeal and this Court granted his motion to consolidate the appeals. The parties have briefed the question whether the district court's transfer order is appealable before trial. Bilbo argues that the district court abused its discretion by transferring him because there had been no prior attempts at rehabilitating him in the juvenile system. Bilbo further contends that the district court committed reversible error in case number 93-4959 by considering the May 19, 1993, offense for which he had not yet been charged, in determining whether the nature of the "alleged offense" supported transfer.

II.

A.

This Court has not previously addressed whether a transfer order is immediately appealable, though in United States v. Doe, 871 F.2d 1248, 1250 (5th Cir. 1989), the Court considered the merits of a pretrial appeal from such an order. Every Circuit that has considered the issue has held that transfer orders are appealable under the collateral order exception to the final judgment rule. See, e.g., United States v. Gerald N., 900 F.2d 189, 189-90 (9th Cir. 1990); In Re Sealed Case, 893 F.2d 363, 366-68 (D.C. Cir. 1990); United States v. A.W.J., 804 F.2d 492, 492-93 (8th Cir. 1986); United States v. C.G., 736 F.2d 1474, 1476-77 (11th Cir. 1984).

The collateral order exception permits appeal of an interlocutory order if the district court's ruling conclusively determines the disputed question, resolves an important issue that is completely separate from the merits, and cannot effectively be reviewed on appeal from a final judgment. Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949). The transfer order easily satisfies the first two requirements--it conclusively determines that Bilbo will be tried as an adult and it does not affect the merits of the criminal case. See C.G., 736 F.2d at 1476. The third prong of the test requires a showing that the legal and practical value of the asserted right would be destroyed if it were not vindicated before trial. See Midland Asphalt Corp. v. U.S., 489 U.S. 794, 799 (1989).

Other courts have concluded that the legal and practical value of the right to be tried as a juvenile would be destroyed without the concomitant right of immediate appeal of a transfer order. See Gerald N., 900 F.2d at 190-91; In Re Sealed Case, 893 F.2d at 366-68; A.W.J., 804 F.2d at 493; C.G., 736 F.2d at 1476-77. These courts note that the "sealing of records and the withholding of name and picture from news media are examples of rights granted to juveniles by 18 U.S.C. § 5038 . . . that would be `irretrievably lost unless the juvenile is permitted to appeal the district court's order before conviction' as an adult." Gerald N., 900 F.2d at 190 (quoting C.G., 736 F.2d at 1477). "In addition, if convicted and sentenced to prison, [the juvenile] would face the distinct possibility of incarceration in an adult penal institution

6

during the pendency of his appeal, since under the Bail Reform Act of 1984 it is no easy matter to obtain bail pending appeal." A.W.J., 804 F.2d at 493. For these reasons, we will hear this appeal prior to trial.

B.

Appellant argues that the district court abused its discretion by transferring him because there had been no prior attempts at rehabilitating him in the juvenile system. "The decision whether to transfer a juvenile to trial as an adult under 18 U.S.C. § 5032 is within the sound discretion of the trial court, provided the court employs and makes findings as to the six criteria outlined in the Code." Doe, 871 F.2d at 1255. The guiding principle in transfer proceedings is whether a transfer would be in the interests of justice. Id. at 1252 (quotations omitted). The statute mandates that the district court consider the following factors in reaching its decision:

> the age and social background of the juvenile; the nature of the alleged offense; the extent and nature of the juvenile's prior delinquency record; the juvenile's present intellectual development and psychological maturity; the nature of past treatment efforts and the juvenile's response to such efforts; [and] the availability of programs designed to treat the juvenile's behavioral problems.

18 U.S.C. § 5032.

The district court made findings on each of these factors in number 93-4959. Bilbo attacks the court's finding on the fifth factor--the nature of past treatment efforts and the juvenile's response to such efforts. Concerning this factor, the district court found:

7

> [T]he juvenile was adjudicated to have engaged in delinquent conduct with regard to two charges on July 28, 1992 and was placed on probation. Although ordered to report to his probation officer twice per month, Bilbo reported only once at the outset of his probationary period. Furthermore, the present offense occurred while on probation.
>
> Bilbo has failed to cooperate with authorities when previously placed in a supervised situation. His resistance to counseling efforts and defiance of authority may be considered in determining whether juvenile or adult proceedings are appropriate. . . . Bilbo's poor response to previous treatment efforts (probation) weighs in favor of transfer.

The testimony of Eric Rhodes, an Orange County juvenile probation officer who supervised Bilbo, supports these findings. Rhodes testified that Bilbo did not respond to probation at all. Bilbo only reported to the probation office once, on August 28, 1992. He was supposed to report twice per month. Rhodes attempted to contact Bilbo by calling his grandmother and his school, but was unable to reach him. The school informed Rhodes that it had withdrawn Bilbo from school. Rhodes next heard that Bilbo had been arrested on weapons charges in March 1993. At that time Rhodes's office decided to drop Bilbo from probation because charges were pending in adult court and Bilbo was no longer a juvenile under Texas law. Rhodes testified that, in his opinion, Bilbo should be treated as an adult.

Bilbo correctly observes that the main purpose of the Juvenile Justice and Delinquency Act, 18 U.S.C. §§ 5031-42, is to "remove juveniles from the ordinary criminal process in order to avoid the stigma of a prior criminal conviction and to encourage treatment and rehabilitation." United States v. Brian N., 900 F.2d 218, 220 (10th Cir. 1990). Bilbo asserts that there has never been a

8

meaningful attempt at rehabilitating him.  As support, he points to Rhodes's testimony that, in connection with Bilbo's adjudication of delinquency, he recommended that Bilbo be committed to the Texas Youth Commission.[3]  Bilbo therefore argues that the district court had no basis for concluding that he could not be rehabilitated.

Bilbo's argument misapprehends the nature of the transfer proceeding and ignores his response to probation.  "[W]hile rehabilitation is a priority, the courts are not required to apply the juvenile justice system to a juvenile's diagnosed intellectual or behavioral problems when it would likely prove to be nothing more than a futile gesture."  Doe, 871 F.2d at 1253.  Bilbo's performance on probation demonstrates that his potential for rehabilitation in the juvenile system is poor.  See United States v. G.T.W., 992 F.2d 198, 199-200 (8th Cir. 1993) (juvenile's failure to follow court orders following earlier truancy proceedings indicates poor prospects for rehabilitation); In re J. Anthony G., 690 F. Supp. 760, 764, 766 (S.D. Ind. 1988) (juvenile's inability to comply with conditions of release indicated need for structured treatment and favored transfer).

The district court also noted that Bilbo had a troubled family life with no significant parental involvement.  His maternal grandparents raised him and have been unable to control his behavior.  The court concluded that this evidence indicated the

---

[3]The juvenile court record contradicts this testimony.  In a document prepared for the court's use in the proceeding, Rhodes recommended one year of court-ordered probation.  Juv. Rec. tab B.

familial support necessary for Bilbo to avoid future criminal activity is lacking and limited the likelihood of successful rehabilitation. The court also observed that Bilbo's extensive delinquency record revealed a pattern of criminal conduct, making his prospects for rehabilitation poor. Accordingly, the district court fully considered Bilbo's prospects for rehabilitation and concluded that they were remote. The record supports this conclusion.

C.

Bilbo next contends that in case number 93-4959, the district court erred by considering as part of the "nature of the alleged offense," the charge that he distributed 90 grams of crack and 280 grams of cocaine powder to undercover officers on May 19, 1993. Relying on In Re Sealed Case, 893 F.2d 363 (D.C. Cir. 1990), Bilbo argues that, in transfer proceedings, the district court may consider only charged criminal acts under the rubric of "the nature of the alleged offense." 18 U.S.C. § 5032. In In Re Sealed Case, the court held: "The plain language of the phrase, the text surrounding it and principles of due process make clear that Congress did not intend § 5032's 'the nature of the alleged offense' category to encompass evidence of other uncharged crimes." 893 F.2d at 368.

The Government correctly points out that it introduced testimony regarding the May 19, 1993, incident without any objection from Bilbo. "If there is no contemporaneous objection to testimony whose admissibility is contested on appeal, the 'plain

10

error' standard of review applies." <u>United States v. Garcia</u>, 995 F.2d 556, 561 (5th Cir. 1993). In order to constitute plain error, the error must have been so fundamental as to have resulted in a miscarriage of justice. <u>Id.</u> Any error the district court may have committed in considering evidence of the May 19 incident does not rise to the level of plain error for two reasons.

First, there is ample evidence to support the district court's decision to transfer Bilbo without considering the May 19 incident. The district court found that five of the six statutory factors supported transfer and the other factor was neutral. This was not a close case. Moreover, unlike <u>In re Sealed Case</u>, the district court here did not assign added weight to the uncharged conduct. <u>See</u> 893 F.2d at 365. The court considered the May 19 incident as only one part of the nature of the alleged offense factor. Further, the other three instances of distribution which had been charged in number 93-4959 involved large amounts of crack (22, 22, and 62 grams), though not as much as the May 19 incident (over 90 grams of crack and 280 grams of powder), and revealed a continuous course of criminal conduct over a period of time. These characteristics, which existed independent of the May 19 incident, led the district court to conclude that the nature of the alleged offense factor weighed in favor of transfer. Accordingly, even without considering the May 19 incident, the district court would have determined that this factor supported transfer and would have transferred Bilbo. <u>Cf.</u> <u>In re Sealed Case</u>, 893 F.2d at 369 n.13

11

(court not convinced district court would have transferred juvenile absent evidence of uncharged crime).

Second, in number 93-5271, the Government charged Bilbo with two crimes arising from the May 19 incident. The district court considered all four instances of distribution in connection with the transfer proceeding in that case. Thus, as the Government points out, Bilbo is, essentially, in the same position he would have been in had the Government charged all four distribution crimes in the first information. Therefore, the district court did not err in its determination of "the nature of the alleged offense."

III.

The district court's transfer order is AFFIRMED.