**UNITED STATES of America, Plaintiff,**

v.

**TLW, a male juvenile, Defendant.**

No. 95–3051–M.

United States District Court,
C.D. Illinois,
Springfield Division.

May 8, 1996.

---

David E. Risley, Springfield, IL, for plaintiff.

Richard D. Frazier, Springfield, IL, for defendant.

## OPINION

RICHARD MILLS, District Judge:

Federal juvenile delinquency.

Government's motion to transfer juvenile to adult status.

### I. BACKGROUND

On November 7, 1995, the Government filed a juvenile complaint against TLW, a young man currently 17 years old. The

Complaint alleges four counts of cocaine and crack distribution in violation of 21 U.S.C. § 841. At the time of the alleged offenses, TLW was 16 years old. Accompanying the Complaint is a certification by the United States Attorney for the Central District of Illinois, on behalf of the United States Attorney General, maintaining TLW committed a qualifying offense and asserting that there is a substantial federal interest in this Court exercising federal jurisdiction.

Thereafter, on December 6, 1995, the Government filed a motion to transfer TLW to adult status and a motion to have TLW obtain a psychiatric evaluation. On the same day, TLW filed a motion to substitute counsel. On December 12, 1995, the Court conducted a hearing and new counsel was appointed.

On January 12, 1996, TLW filed a motion stating that he wanted a full inpatient psychological evaluation. Following a hearing and proper consent, the Court ordered TLW to be transported to the Southwest Multi-County Correctional Center in Dickinson, North Dakota, and that a complete psychological evaluation be performed. On April 22, 1996, the Court received the report of the evaluation, and in due course the parties filed respective memoranda for and against the transfer motion. On April 29, 1996, the Court conducted a hearing on the motion in which the Government presented evidence and the Court heard arguments.

## II. LAW AND PROCEDURE

Because Federal juvenile proceedings are rare, there is little binding authority interpreting the statute governing transfer motions, 18 U.S.C. § 5032. *But see United States v. J.J.K.,* 76 F.3d 870 (7th Cir.1996) (discussing issues not relevant to this case). Thus, the Court must address the issues presented by § 5032 without the aid of Seventh Circuit guidance.

In pertinent part, § 5032 states:

Evidence of the following factors shall be considered, and findings with regard to each factor shall be made in the record, in assessing whether a transfer would be in the interest of justice: the age and social background of the juvenile; the nature of the alleged offense; the extent and nature of the juvenile's prior delinquency record; the juvenile's present intellectual development and psychological maturity; the nature of past treatment efforts and the juvenile's response to such efforts; the availability of programs designed to treat the juvenile's behavioral problems. In considering the nature of the offense, as required by this paragraph, the court shall consider the extent to which the juvenile played a leadership role in an organization, or otherwise influenced other persons to take part in criminal activities, involving the use or distribution of controlled substances or firearms. Such a factor, if found to exist, shall weigh in favor of a transfer to adult status, but the absence of this factor shall not preclude such a transfer.

*Id.*

Unfortunately, § 5032 raises more questions than it provides answers. For example, what exactly did Congress mean by "in the interest of justice"?—What is the burden of proof?—Is there a presumption in favor of maintaining juvenile status?—Does one or more of the six factors carry more weight?—Does "prior delinquency record" include arrests or only convictions?—Should the alleged offense be taken as true or does the Government need to prove the charged offense?—How far does the requirement to examine the juvenile's leadership role extend the definition of "alleged offense"?—Can evidence of a conspiracy be considered even though conspiracy is not a transferable offense?

Compounding the problem is the fact that the legislative history to § 5032 is sparse. *See United States v. Brian N.,* 900 F.2d 218, 221 (10th Cir.1990) (noting that the legislative history to § 5032 "is scant and capable of differing interpretations."). In short, although § 5032 is not unconstitutionally vague, it is far from precise. Accordingly, the Court must sail on uncharted waters.

### A. Standard

The term "in the interest of justice" does not lend itself to concise definition. Never-

theless, the Sixth Circuit has tried to make the analysis more precise. According to the Sixth Circuit, "a motion to transfer is properly granted where a court determines that the risk of harm to society posed by affording the defendant more lenient treatment within the juvenile justice system outweighs the defendant's chance for rehabilitation." *United States v. One Juvenile Male*, 40 F.3d 841, 844 (6th Cir.1994).

■ Most other circuits that have addressed the issue, however, generally decline to prescribe an exact definition or test. *See e.g., United States v. Nelson*, 68 F.3d 583, 587 (2nd Cir.1995). Regardless of how the standard is described, however, it is clear that whether a transfer is warranted is a case-by-case determination that strikes a balance between the need to provide a rehabilitative environment for young offenders on one hand, and the need to protect society and the need to provide adequate sanctions for anti-social acts on the other hand. *United States v. Alexander*, 695 F.2d 398, 401 (9th Cir.1982) (citing *United States v. E.K.*, 471 F.Supp. 924, 932 (D.Or.1979)).

#### B. Presumptions

■ Although § 5032 does not expressly mandate a presumption, at least two circuits maintain that a presumption in favor of juvenile treatment exists. *See United States v. A.R.*, 38 F.3d 699, 706 (3rd Cir.1994) ("[t]he statute clearly intends a presumption of juvenile treatment."); *Nelson*, 68 F.3d at 587. This Court agrees and will apply the presumption.

#### C. Burden of Proof

■ Because there is a presumption of juvenile treatment, the Government bears the burden of establishing transfer. *A.R.*, 38 F.3d at 706. Courts, however, have split on whether the Government must meet its burden by a preponderance of the evidence or by clear and convincing evidence. *Compare United States v. Parker*, 956 F.2d 169 (8th Cir.1992) *with United States v. M.L.*, 811 F.Supp. 491 (C.D.Cal.1992). The dispute depends on how the presumption of juvenile treatment, assuming it exists, should be applied?

Although it is an interesting question, the Court finds that which burden of proof applies does not really matter. As noted by the Third Circuit, "[t]he ultimate standard, set forth in the statute, is whether the court finds that the transfer 'would be in the interests [sic] of justice.'" *A.R.*, 38 F.3d at 706. Accordingly, transfer is either in the interest of justice or it is not. Therefore, although the Court will apply the presumption of juvenile treatment, an undue emphasis on the Government's burden serves to confuse rather than clarify the inquiry.

#### D. The Factors

■ Most courts agree that the six statutory factors need not be accorded equal weight, and that the weight a court decides to assign each factor is within its discretion. *See One Juvenile Male*, 40 F.3d at 845. Nevertheless, a district court is "constrained" to the six factors. *Nelson*, 68 F.3d at 587. Accordingly, the Court will consider the factors in their totality but only the six factors listed in § 5032.

### III. ANALYSIS

#### A. Jurisdiction

Before the factors can be considered, the Court must decide a jurisdictional issue. TLW argues that this Court should decline to exercise federal jurisdiction because "[t]his case is simply another run of the mill drug charge which presents no significant federal interest to warrant the exercise of federal jurisdiction." *See United States v. Male Juvenile*, 844 F.Supp. 280 (E.D.Va.1994). In response, the Government argues that the decision to certify was carefully considered.

■ The Court finds, although TLW is correct that the Court and not the Attorney General, through certification, decides whether to exercise federal jurisdiction, that there is a substantial federal interest in this case. This is not a "run of the mill" drug case and is of the type Congress had in mind when it made 21 U.S.C. § 841 a transferable offense. *See* 18 U.S.C. § 5032. Accordingly, the Court will exercise jurisdiction.

### B. The Six Factors

#### 1. Age and Social Background

■ TLW was born on October 20, 1978. Therefore, he was 16 years old when the alleged offenses occurred and is now 17 years old. In regard to "social background", although the Court is not exactly sure what all the term encompasses, it is clear that TLW has not had a "typical" childhood.

TLW's biological father, Richard Joiner, Jr. a/k/a the Mississippi Kid, is a long-time cocaine user who recently pleaded guilty to conspiracy to distribute cocaine and was sentenced by this Court to 46 months in prison.[1] Moreover, there is evidence in the record that TLW sold cocaine to his biological father, and that his cousin, James Collins, recruited TLW to sell cocaine for him when TLW was only 14 years old.

According to TLW, his mother, Ethel Waler, is mentally ill. TLW also told the psychologists in North Dakota that he has not had the experience of step-parents or foster parents, but that he was close to his grandfather who died when he was 13 years old.[2] TLW also indicated that he had no legal guardian and that he did not have a significant emotional relationship with anyone at this time in his life.

At the hearing, the Government argued that at the time of the alleged offenses, TLW was fully emancipated and split his time between Springfield and Jacksonville.

Conversely, the evaluation report also indicates that TLW had continued communication with family members when he was in North Dakota, and that he was close to his sister Felicia, who is 12 years old. TLW reported that he fathered a child when he was 15 years old, but that the child had died at a young age.

In terms of school, the record is somewhat vague. Apparently, TLW completed the sixth grade and attended various other schools on a sporadic basis. TLW indicated to the psychologists that he always had trouble learning and was held back in kindergarten.

Although TLW denies it, there is evidence in the record that TLW is a member of the Vice Lords street gang.

When all is considered in this category, the Court finds that TLW has had a very troubled social history and comes from a very unstable home environment. In terms of whether TLW should be transferred to adult status, his age and social history cuts both ways. On one hand, he apparently has been emancipated since he was very young, and his problematic past would seem to make rehabilitation less likely. *See United States v. H.S., Jr.,* 717 F.Supp. 911, 917 (D.D.C. 1989), *rev'd on other grounds sub nom, In re Sealed Case,* 893 F.2d 363 (D.C.Cir.1990).

Conversely, as pointed out by TLW's Counsel, "[i]t is obvious that TLW was reared in a family lost in the drug culture ... [and] it would have been surprising if TLW had not been involved with drugs." Thus, there is a plausible argument that TLW's environment contributed to his behavior, and that a change in that environment might make rehabilitation possible.

#### 2. Nature of Alleged Offenses

This factor presents a major procedural problem. Section 5032 does not state whether the Court must accept as true the alleged offenses, and does not define "alleged offense". Moreover, there is an apparent inconsistency in the statute as it relates to drug distribution and conspiracy.

■ In regard to the evidence issue, the Court agrees with the Second Circuit that the better practice is for a district court to assume, for the purposes of the transfer hearing, that the juvenile committed the offense charged and not examine the strength of the Government's evidence. *Nelson,* 68 F.3d at 589.

■ The scope of "alleged offense" is more difficult. On one hand, there is authority for the proposition that the inquiry should

---

1. Two of TLW's uncles and one of his cousins have also recently pleaded guilty to drug charges.

2. At another part of the report, TLW indicated that he had a step-father who was married to his mother for six years and who had recently passed away.

be limited to the nature of the alleged offense, and "not some other offense." *Id. See In Re Sealed Case,* 893 F.2d 363, 369 n. 12 (D.C.Cir.1990) ("Congress could not have contemplated the hearing to focus on a plethora of uncharged and unproven offenses."). Conversely, § 5032 mandates that the Court "shall consider the extent to which the juvenile played a leadership role in an organization, or otherwise influenced other persons to take part in criminal activities, involving the use or distribution of controlled substances or firearms." 18 U.S.C. § 5032.

Therefore, as it relates to 21 U.S.C. § 841, § 5032 is internally inconsistent. One part of the statute mandates consideration limited to the alleged offense—distribution—and another part prescribes inquiry into a much broader area—conspiracy. This is problematic because conspiracy is not a transferable offense. *See In re Sealed Case,* 893 F.2d at 368 (reversing, based on an earlier version of § 5032, because the district court considered evidence of conspiracy). Thus, the question becomes how limited is the inquiry of the alleged offense?

The Court finds that § 5032 must be applied strictly as it is written. Therefore, with the exception of evidence relating to a juvenile's leadership and influence over others to commit criminal acts, the only evidence that can be considered are a juvenile's alleged offenses. Moreover, although a court must assume a juvenile committed the charged offenses, a court will not assume that a juvenile played a leadership or influencing role. The Government must present sufficient proof on the leadership issue. Accordingly, the Court will not consider any of the evidence submitted by the Government that does not relate directly to the charged offenses or TLW's leadership or influencing role.

### a. Alleged Offenses

TLW committed the offense of distribution of cocaine or crack cocaine on four separate occasions. In each of the four transactions, TLW received over $1,000.00. Moreover, during one of the transactions, TLW possessed a gun. In short, TLW is not a low-level drug dealer. Additionally, the possession of the gun during one of the transactions indicates the capability of violence. Accordingly, the Court finds that the nature of the alleged offenses weighs heavily in favor of transfer.

### b. Leadership Role

The parties dispute whether TLW played a leadership role. The Government argues that TLW was a major figure and that he was the leader of the Jacksonville branch of a large drug distribution ring. As part of his leadership role, the Government asserts TLW recruited others to distribute drugs for him. In response, TLW maintains that it does not make sense that as a juvenile, he would be the leader over many, much older persons. Instead, TLW contends that he was a subordinate under the control of others.

The Court finds that both parties are correct. The evidence supports a finding that TLW was both a leader and a follower in the drug distribution scheme. For purposes of § 5032, however, the Court finds that the Government has sufficiently shown that TLW recruited and otherwise influenced others to take part in criminal activities. *See* 18 U.S.C. § 5032. Accordingly, as mandated by § 5032, that fact must weigh in favor of transfer.

### 3. Juvenile Record

TLW's prior juvenile record also presents a procedural problem. The problem arises because TLW has been charged with at least 18 separate offenses, ranging from Aggravated Battery to Failure to Signal When Required, but, other than being placed on court supervision for traffic offenses, has never been subject to any court ordered punishment. Accordingly, TLW's Counsel argues that the Court must accept the decisions of the state authorities, and that the Court cannot consider arrests and charges that did not result in a conviction.

Conversely, the Government argues that "delinquency record" includes all the record, not only convictions. Additionally, the Government contends that the Court should consider the reasons why some of the charges were dropped and the factual basis for the charges.

■ The Court finds that TLW's entire juvenile record can be considered, but that it was improper for the Government to present evidence trying to prove the underlying validity of some of the juvenile arrests. *See United States v. H.S., Jr.,* 717 F.Supp. at 916. In other words, the Court should and must consider the entire record, including reasons for dismissal, but it is not appropriate to litigate the merits of a previous arrest at the transfer hearing.

After considering only the appropriate record, the Court finds that this factor is similar to the first factor, age and social history, in that it weighs both ways. On one side, there is a pattern of violence beginning at a very young age. On the other side, there is the fact that TLW has never been convicted of a serious offense.

### 4. Intellectual Development and Psychological Maturity

Because TLW initially tried to manipulate the evaluation process, the staff at the Southwest Multi–County Correction Center had difficulty assessing him. Nevertheless, the basic conclusion of the evaluation report is that TLW is of low average to average intellectual ability. One of the psychologists, Dr. Fehr, also concluded that TLW "is clearly manipulative and probably meets the criteria for a Conduct Disorder . . . ." Dr. Fehr also noted that TLW's tested mental age of 12 "is probably lower than his true ability."

The Court concludes that this factor weighs in favor of juvenile treatment. Although TLW is manipulative, his intellectual development and psychological maturity would not seem to preclude rehabilitation.

### 5. Past Treatment Efforts

Besides some apparent treatment at age 13 following the death of his grandfather, TLW's only treatment occurred during the evaluation process in North Dakota. Accordingly, there is no evidence that TLW has tried and failed in a treatment program. Moreover, the basic conclusion of the evaluation report is that TLW "has some capability of possibly being responsive to a therapeutic setting."

The Court finds that this factor weighs in favor of treatment as a juvenile.

### 6. Available Programs

At the hearing, the Probation Office and the Government presented evidence of possible juvenile treatment programs available in the Bureau of Prisons. Based upon that evidence and the evaluation report, the Court finds that appropriate programs are available, and that this factor weighs in favor of juvenile treatment.

## IV. CONCLUSION

Because some of the factors weigh in opposite directions, an analysis of the six factors does not result in a one-sided decision. Accordingly, striking the balance between rehabilitation, protection, and punishment is not easy in this case. Nevertheless, when all six factors are carefully considered and balanced, the Court finds that it is in the interest of justice to transfer TLW to adult status. Specifically, the Court finds that the nature of the offense coupled with TLW's social history and past juvenile record mitigates in favor of transfer to adult status.

*Ergo,* the Government's motion (d/e 12) is **ALLOWED.**