UNITED STATES of America,
Plaintiff–Appellee,

v.

Terry L. WILSON, Defendant–Appellant.

No. 97–1190.

United States Court of Appeals,
Seventh Circuit.

Submitted Oct. 24, 1997.

Decided July 9, 1998.

David E. Risley (submitted), Office of the United States Attorney, Springfield, IL, for Plaintiff–Appellee.

Richard D. Frazier, Metnick, Wise, Cherry & Frazier, Springfield, IL, for Defendant–Appellant.

Before CUMMINGS, BAUER and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Terry L. Wilson was a minor at the time he committed the crime of delivering a controlled substance. The government moved to transfer him to adult status pursuant to 18 U.S.C. § 5032, and after a hearing, the dis-

trict court granted the motion. Wilson subsequently pled guilty, reserving his right to challenge the transfer ruling. He now claims three errors in the district court's ruling. First, he faults the court for considering the fact that he possessed a firearm during the distribution, arguing that the court may not consider uncharged conduct in assessing the nature of the alleged offense. Second, he argues that the district court exceeded its authority when it considered his entire juvenile record instead of confining its review to convictions. Third, he charges that the district court abused its discretion in finding that the interest of justice was served by transferring him to adult status. Because we find that the district court acted well within its discretion, we affirm.

## I.

At the age of sixteen, Wilson was charged in a juvenile complaint with three counts of distributing cocaine and one count of distributing crack. If committed by an adult, these offenses would constitute violations of 21 U.S.C. § 841. On one occasion when he was delivering drugs to a government informant, Wilson invited the informant into his bedroom to show off his 9 mm. semiautomatic pistol. Wilson indicated to the informant his willingness to use the gun, and demonstrated its operation. Wilson then completed the transaction by supplying the informant with an ounce of cocaine in exchange for cash. The record does not reveal whether Wilson possessed or brandished a gun in relation to any other drug transaction.

On the government's motion to transfer Wilson to adult status, the district court held a hearing and then granted the motion. Pursuant to § 5032, the district court considered six factors in determining whether a transfer to adult status would be in the interest of justice, and made findings on the record with respect to each one: (1) the age and social background of the juvenile; (2) the nature of the alleged offense; (3) the extent and nature of the juvenile's prior delinquency record; (4) the juvenile's present intellectual development and psychological maturity; (5) the nature of past treatment efforts and the juvenile's response to such efforts; and (6) the

availability of programs designed to treat the juvenile's behavioral problems. At the further direction of the statute, the court considered "the extent to which the juvenile played a leadership role in an organization, or otherwise influenced other persons to take part in criminal activities, involving the use or distribution of controlled substances or firearms." 18 U.S.C. § 5032.

The district court found that Wilson had a very troubled social history and came from a very unstable home environment. In weighing whether these findings favored transfer, the court opined that Wilson's age and social history "cut both ways." *United States v. TLW*, 925 F.Supp. 1398, 1402 (C.D.Ill.1996). The court noted that although rehabilitation would seem unlikely after the amount of time that Wilson had lived in such an environment, there remained a chance that a change in environment might make rehabilitation possible.

For the second factor, the court contemplated the scope of evidence it could consider in determining the nature of the alleged offense. Relying on *In re Sealed Case*, 893 F.2d 363 (D.C.Cir.1990), the court determined that "with the exception of evidence relating to a juvenile's leadership and influence over others to commit criminal acts, the only evidence that can be considered are a juvenile's alleged offenses." *TLW*, 925 F.Supp. at 1403. Using that standard, the court determined that Wilson had delivered drugs on multiple occasions, that each transaction exceeded $1,000, and that during one transaction, he possessed a gun, indicating a capability for violence. The court concluded that the nature of the alleged offense weighed heavily in favor of transfer. The court then separately considered Wilson's leadership role in the offenses, finding that he was both a leader and a follower, and that the government had sufficiently shown that he recruited others to participate in criminal activities. That fact also weighed in favor of transfer. *Id.*

In weighing Wilson's juvenile record, the court determined that it could properly consider the entire delinquency record, and not just the convictions, as Wilson urged. *Id.*, 925 F.Supp. at 1404. However, the court

limited its review to the record itself, and ruled that the government could not present evidence attempting to prove the validity of arrests that did not result in convictions. Wilson's juvenile record was extensive, but the court found that, like Wilson's troubled social background, this factor weighed both ways. Although the record was extensive and indicated a pattern of violence beginning at a very young age, Wilson had never been convicted of a serious offense. As for Wilson's intellectual development and psychological maturity, the court found that this factor weighed against transfer because Wilson had enough intellectual ability and maturity to facilitate rehabilitation. On the fifth factor, the court found that there was no evidence that Wilson had tried and failed in a treatment program, weighing against transfer. The final factor also weighed against transfer, according to the district court, because appropriate juvenile programs were available. In balancing all six factors together, the court found that transferring Wilson to adult status was in the interest of justice. In reaching this conclusion, the court gave special weight to the nature of the offense, Wilson's social history and his past juvenile record. *Id.*

## II.

■ We review § 5032 transfers for abuse of discretion. *United States v. Jarrett*, 133 F.3d 519, 536 (7th Cir.1998), *cert. denied*, —— U.S. ——, 118 S.Ct. 1688, —— L.Ed.2d —— (1998). Wilson contends that the district court erred as a matter of law when it considered the uncharged conduct of possessing a gun in assessing the nature of the alleged offense, and when it considered arrests that did not result in convictions in evaluating his juvenile record. Wilson also maintains that since only one factor weighed in favor of transfer to adult status, the interest of justice was not served by removing him from juvenile status.

### A.

■ Wilson relies entirely on *Sealed Case* for the proposition that the district court may not look beyond the allegations contained in the indictment when assessing the

nature of the alleged offense. 893 F.2d at 368. Because the indictment alleges only that he delivered controlled substances, it was improper, he asserts, for the court to consider that he possessed a gun and had a propensity for violence. But Wilson misapprehends the D.C. Circuit's holding. In *Sealed Case*, the district court considered the juvenile's participation in a larger drug-related conspiracy when assessing the nature of the alleged offense, which in that case was delivery of a controlled substance. The D.C. Circuit reversed, holding that Congress did not intend the "nature of the alleged offense" analysis to encompass evidence of other, uncharged crimes. 893 F.2d at 368. The court reasoned that the plain language of the statute, which refers to the alleged offense, necessarily excluded consideration of *un*alleged offenses. Moreover, the statute specifically precludes transfers when the charge is conspiracy, lending further support to the court's holding that it was improper to consider an unalleged conspiracy as part of the "nature of the alleged offense" analysis. *Id.* The *Sealed Case* court found that the district court abused its discretion when it considered evidence of "additional discrete offenses" which were "quite clearly independent and as yet uncharged offenses in their own right." *Id.* That limitation did not, however, preclude consideration of "evidence going to any specifics of the offense, set out in the Information." *Sealed Case*, 893 F.2d at 369–70. For example, the Information in that case did not specify the amount of drugs distributed, but the court held it would be proper to consider the amount, which goes to the nature of the offense "by speaking to its gravity." *Id.*, 893 F.2d at 370.

Here, the district court considered that Wilson possessed and brandished a gun during the delivery of cocaine to a government informant. Although the indictment did not mention the gun, we believe the district court was correct to consider it in evaluating the nature of the alleged offense. The gun was not, after all, unrelated to the offense, but was used by Wilson to help facilitate the cocaine delivery. In that sense, the firearm possession was neither "discrete" nor "independent" but rather part of the offense, and

spoke to the gravity of the offense. Wilson could have delivered cocaine and crack without brandishing a firearm in the process, but he increased the risk of violence by introducing the gun into the transaction. Congress did not limit the court's review to the facts alleged on the face of the indictment, but instead used a much more expansive phrase, the "nature of the alleged offense."

Our conclusion is bolstered by the sentencing guideline applicable to Wilson's offense. Section 2D1.1 of the Guidelines specifies the base offense level for trafficking in drugs. Part (b) of that Guideline addresses "Specific Offense Characteristics," the first of which is relevant here: "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels." That the Guidelines consider possession of a firearm to be a "specific offense characteristic" of trafficking in drugs supports a finding that gun possession goes to the nature of the alleged offense of distributing cocaine. In fact, the district court applied that very enhancement to Wilson's sentence, and he did not object. Wilson thus tacitly admits that possession of the gun could be considered an integral part of the offense. The district court was therefore correct to consider Wilson's firearm possession in assessing the nature of the alleged offense.

## B.

Wilson next complains that the district court erred when it considered his entire juvenile record, including a number of arrests that did not result in convictions. As with the "nature of the alleged offense" provision, we are confronted with a paucity of case law interpreting this part of the transfer statute. The government cites *United States v. Parker,* 956 F.2d 169, 172 (8th Cir.1992), where the court assumed without discussion that the district court properly considered a juvenile's arrest record even though the arrests did not result in convictions. Wilson claims that the district court agreed with him that it should consider convictions only, and that the district court relied on *United States v. H.S.,* 717 F.Supp. 911 (D.D.C.1989), *rev'd sub nom. In re Sealed Case,* 893 F.2d 363 (D.C.Cir.1990), in so holding. Wilson is in-

correct. On the contrary, the district court clearly stated that review of the entire juvenile record is appropriate, but that it is improper for the government to present evidence in proof of the underlying validity of the juvenile arrests. *TLW,* 925 F.Supp. at 1404. The district court actually cited *H.S.* in *support* of reviewing the entire juvenile record.

We agree with the district court. The plain language of the statute directs the court to consider "the extent and nature of the juvenile's prior delinquency record." 18 U.S.C. § 5032. Again, Congress could have limited the inquiry to the juvenile's prior convictions, but it did not. Instead, the statute allows review of the delinquency *record,* which includes arrests as well as convictions. We agree with the district court that the government should not be allowed to hold mini-trials, attempting to prove the underlying conduct in those instances where an arrest did not result in a conviction. Such evidence is outside the juvenile's record and thus is not within the limits contemplated by the statute. Moreover, these collateral proceedings would greatly burden the parties and the court with no discernable benefit. The district court struck the proper balance in reviewing the juvenile delinquency record in its entirety and nothing else. Ultimately, the district court found that Wilson's juvenile record weighed in favor of transfer, and we have no reason to find that the district court abused its discretion in making that finding. At the tender age of sixteen, Wilson's record already spanned seven years and evidenced an alarming propensity towards violence. The court was well within its discretion to find that such a record favored transfer to adult status.

## C.

Wilson also faults the district court for placing excessive emphasis on the nature of the alleged offense when concluding that the transfer would be in the interest of justice. Wilson advocates equal consideration of each of the six factors set out in § 5032, and argues that transfer would be inappropriate when only one factor weighs in favor of transfer, three weigh against, and two cut

both ways. A number of circuits have held that, although the district court must consider all six factors, it need not give equal weight to each, but may balance them as it deems appropriate. *See United States v. Juvenile JG*, 139 F.3d 584, 586–87 (8th Cir. 1998) (the weight assigned to any one factor listed in the statute is within the sound discretion of the trial court); *United States v. Leon D.M.*, 132 F.3d 583, 589 (10th Cir.1997) (the court may balance the six factors as it deems appropriate); *United States v. Wellington*, 102 F.3d 499, 506 (11th Cir.1996) (district court has broad discretion in the interest of justice analysis, and is free to determine how much weight to give to each factor); *United States v. Juvenile Male No. 1*, 47 F.3d 68, 71 (2d Cir.1995) (same); *United States v. One Juvenile Male*, 40 F.3d 841, 845–46 (6th Cir.1994) (same); *United States v. A.R.*, 38 F.3d 699, 705 (3d Cir.1994) (same); *United States v. Doe*, 871 F.2d 1248, 1254–55 (5th Cir.1989), cert. denied, 493 U.S. 917, 110 S.Ct. 276, 107 L.Ed.2d 257 (1989) (same).

We join those circuits today and hold that the district court had discretion to give more weight to some factors than to others. Determining whether the transfer of a juvenile to adult status is in the interest of justice is not a simple arithmetical exercise, where the court adds up all the factors to see if the sum is a positive or negative number. The district court was within its discretion to give more weight to the nature of the alleged offense than to the other factors. *Wellington*, 102 F.3d at 506. Wilson was charged with distributing controlled substances, in this case both cocaine and crack. In the course of that distribution, Wilson brandished a gun and expressed a willingness to use it. The district court did not abuse its discretion in determining that the seriousness of that conduct warranted a transfer to adult status, especially in light of the history of violent behavior revealed in Wilson's juvenile record. We therefore affirm the judgment of the district court.

AFFIRMED.