# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1144

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellee, | * Appeal from the United States |
| | * District Court for the |
| v. | * District of South Dakota. |
| | * |
| Juvenile LWO, | * |
| | * |
| Defendant - Appellant. | * |

_____

Submitted: May 12, 1998

Filed: November 4, 1998

_____

Before RICHARD S. ARNOLD, JOHN R. GIBSON, and FAGG, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Juvenile LWO appeals the district court's order transferring his case for proceedings against him as an adult on charges of assault with a dangerous weapon, assault resulting in serious bodily injury, first degree burglary, and use of a firearm in the commission of a felony. LWO argues that the district court erred in reaching its conclusion to transfer his case to adult status by relying on evidence of an uncharged assault and by relying on evidence of an assault for which a tribal hearing was pending. LWO also argues that the district court abused its discretion in concluding that a

transfer to adult status would be in the interest of justice. We conclude that the district court committed error and remand the case for further proceedings.

The charges against LWO arose out of the shooting of Ellen Day Boy.[1] Day Boy and her roommate Hattie White Butterfly arrived at their trailer house early in the morning of October 17, 1997. They found the trailer house door open and determined that someone had been inside. Hearing a gunshot behind the trailer, Day Boy went in back to investigate, where she found LWO holding a rifle he had taken from the trailer. He fired the rifle, hitting Day Boy in the upper right biceps. He fired a second shot that struck Day Boy in the back. Officers arrested LWO later that morning. He was charged with assault with a dangerous weapon under 18 U.S.C. §§ 113(a)(3) and 1153 (1994); assault resulting in serious bodily injury under 18 U.S.C. §§ 113(a)(6) and 1153; first-degree burglary under South Dakota Codified Laws § 22-32-1(3) (Lexis 1998) and 18 U.S.C. § 1153; and use of a firearm in commission of a felony under 18 U.S.C. § 924(c)(1) (1994). The United States filed a certificate pursuant to 18 U.S.C. § 5032 (1994), asserting that the State of South Dakota did not have jurisdiction and that there was a substantial federal interest in the case. The United States also filed a motion pursuant to section 5032 to transfer LWO's case to adult status.

The district judge conducted a hearing on the motion, and FBI Agent William Grode testified about the shooting of Day Boy. Grode then testified, over objection, that on March 18, 1997, LWO beat his girlfriend and kicked and struck tribal police officers when they arrived on the scene. Grode further testified, over objection, that on September 13, 1997, LWO was one of four people involved in the assault of Lonnie Bad Bear. According to Grode, Bad Bear had told tribal officers that LWO, LWO's brother Orville, and two other men had attacked him with a handgun and a shovel. On

---

[1]A district court may assume the truth of the alleged offense at a transfer hearing, see In re Sealed Case, 893 F.2d 363, 369 (D.C. Cir 1990), and we have so stated the facts as alleged.

cross-examination, Grode admitted it was unknown who had the handgun and the shovel. Grode also admitted that while there was evidence that LWO was present during the attack, there was no evidence that he actively participated in the attack. After both the March 18 and September 13 incidents, LWO was arrested for public intoxication.

A number of witnesses then testified as to LWO's background, his ability in school, his psychiatric condition, his display of fetal alcohol symptoms, his response to treatments and the availability of further treatment.

Attached to the motion to transfer as Exhibit 8 was a record of the Oglala Sioux Tribal Court. The tribal court record had no reference to any charges or offenses arising out the alleged assault of September 13. As for the alleged assault of March 18, the tribal record listed offenses of intoxication, profane language, assault, and resisting lawful arrest. There was no disposition of these offenses, and the disposition register was marked "hearing 11.13.97." The tribal court record also listed various offenses including a malicious mischief offense that had a disposition of "30 days good behavior"; a fighting offense that had a disposition of "30 days good behavior"; an intoxication offense and a spouse abuse offense that had dispositions of "domestic violence and 60 days"; and two driver's license offenses that had dispositions of "no report" and "no license."

At the conclusion of the hearing, the district court addressed the six factors provided in section 5032 for determining whether a transfer to adult status would be in the interest of justice. With respect to the social background of LWO, the court found LWO's mother "wasn't there in April of 1997,[2] when there was an act of violence,

_____

[2]Neither the tribal court record nor the transcript of Grode's testimony provides any evidence of an incident occurring in April of 1997. The transcript of the hearing makes it clear that the court was referring to the alleged assault of March 18, 1997.

assaultive behavior. She wasn't there for him on September 13 when there was another act of violence involving the handgun."

The court assessed LWO's prior delinquency record as follows:

With respect to the third factor that the Court must consider, the extent and nature of the juvenile's prior delinquency record, the Court also has already alluded to the two incidents; one in April[3] and one in September of 1997. Exhibit 8 indicates malicious mischief, intoxication, spouse abuse, resisting lawful arrest, and driver's license violations.

The court addressed the remaining section 5032 factors and concluded that transferring LWO's case to adult status was in the interest of justice.

LWO argues that the district court erred by relying on evidence of the alleged assault of September 13, for which there were no charges, and by relying on evidence of the alleged assault of March 18, for which there was a hearing on various charges pending at the time of the transfer hearing. Thus, the questions before us are whether a district court may consider evidence of an uncharged assault in determining whether a transfer would be in the interest of justice and, similarly, whether a district court may consider evidence of an assault for which there has been a charge but no conviction,[4] in determining whether a transfer would be in the interest of justice. Because answering these questions requires us to interpret section 5032, we will review the

_____

[3]See note 2 supra.

[4]In this opinion, we do not use the term "conviction" in its most technical sense. We recognize that under the federal statutes a juvenile is not adjudicated to be guilty as a criminal; rather, he is adjudicated to be a juvenile delinquent. See United States v. Hill, 538 F.2d 1072, 1074 (4th Cir. 1976); 18 U.S.C. § 5037 (1994). States refer to judgments against juveniles with different nomenclature. In using "conviction," we simply mean a disposition of a charge in which there has been an adjudication or an admission of behavior which violates penal law.

-4-

district court's decision de novo.  See United States v. Nelson, 68 F.3d 583, 588 (2d Cir. 1995), cert. denied, 117 S.Ct. 1259 (1997); In Re Sealed Case, 893 F.2d 363, 369 n.13 (D.C. Cir 1990).

We begin our analysis with the plain language of section 5032, in which Congress provided six factors for the district court to address in determining whether a transfer would be in the "interest of justice."  Section 5032 states:

> Evidence of the following factors shall be considered, and findings with regard to each factor shall be made in the record, in assessing whether a transfer would be in the interest of justice:  the age and social background of the juvenile;  the nature of the alleged offense;  the extent and nature of the juvenile's prior delinquency record; the juvenile's present intellectual development and psychological maturity;  the nature of past treatment efforts and the juvenile's response to such efforts; the availability of programs designed to treat the juvenile's behavioral problems.

The plain language of the statute does not explicitly mention offenses for which there has been no charge or a charge but no conviction.  Nevertheless, the United States argues that section 5032 permits the court to consider evidence of the alleged assaults. In interpreting the six "interest of justice" factors provided by section 5032 we do not write on a clean slate, as the D.C. Circuit has already interpreted section 5032's "nature of the alleged offense" factor in a similar context.

In In re Sealed Case, the United States, which sought to transfer the defendant to the district court for trial as an adult, charged the defendant with multiple counts of cocaine distribution and a count of conspiracy to possess and distribute cocaine.  See 893 F.2d at 365.  The United States later dropped the charge of conspiracy to possess and distribute cocaine.  See id.  Nevertheless, the district court considered evidence of the defendant's participation in the conspiracy at the transfer hearing when it was analyzing the "nature of the alleged offense" pursuant to section 5032.  See id.

The D.C. Circuit concluded the district court had erred in interpreting the statute to allow consideration of the conspiracy evidence. In the court's opinion, the plain language of the phrase, "the nature of the alleged offense," could not plausibly be interpreted to encompass evidence of unalleged offenses. See id. at 368. Furthermore, Congress had provided the six "interest of justice" factors with specificity; thus, considering all kinds of extrinsic evidence about the juvenile's other current and past activities when analyzing the "nature of the alleged offense" would undermine the "thrust of the entire section." Id. at 368-69. Finally, the court observed that due process principles militated toward interpreting the "nature of the alleged offense" as excluding evidence of offenses different from the one charged. See id. at 369. While a juvenile can contest evidence offered for five of the six "interest of justice" factors provided by section 5032, the district court is entitled to assume that the juvenile committed the offense charged for the purpose of the transfer hearing. See id. Such an assumption does not violate the juvenile's due process rights because a trial will correct any reliance on inaccurate allegations made at the transfer hearing. See id. However, allegations of other uncharged criminal acts will not be corrected at trial; thus, allowing a district judge to consider evidence of uncharged crimes under the "nature of the alleged offense" category and to presume that the juvenile committed the uncharged crimes would violate the juvenile's due process rights. See id.

We agree with the D.C. Circuit's reasoning and its conclusion that section 5032 "does not authorize a judge to consider evidence of other crimes in assessing 'the nature of the alleged offense.'" Id. The United States maintains that even if evidence of the alleged assaults cannot be considered under the "nature of the alleged offense" factor, it may still be considered under one of the other five "interest of justice" factors.

Four other "interest of justice" factors could possibly be read to support considering evidence of the alleged assaults: "the extent and nature of the juvenile's prior delinquency record"; "the juvenile's present intellectual development and psychological maturity"; "the age and social background of the juvenile"; and "the

nature of past treatment efforts and the juvenile's response to such efforts."  Regarding the "extent and nature of the juvenile's prior delinquency record," just as the D.C. Circuit believed that the plain language of the term "the nature of the *alleged* offense" could not plausibly be interpreted to encompass evidence of *un*alleged offenses, see id. at 368, we believe the plain language of the term "the juvenile's prior *delinquency record*" cannot plausibly be interpreted to encompass evidence of *un*recorded acts, nor can it be plausibly interpreted to encompass evidence of conduct which has not been adjudicated or admitted to be *delinquent* or *criminal* (emphasis added).  Thus, the plain language of the term "the juvenile's prior delinquency record" would not encompass evidence of incidents or behavior, which could be of a delinquent or criminal nature, for which there has been no charge or a charge but no conviction.  Because we conclude the plain language of the term "the extent and nature of the juvenile's delinquency record" is unambiguous, we do not inquire further about Congress' intent in using the term.  See Adams v. Apfel, 149 F.3d 844, 846 (8th Cir. 1998).

Our agreement with the D.C. Circuit does not extend to its interpretation of the terms "the juvenile's present intellectual development and psychological maturity," "the age and social background of the juvenile," and "the nature of past treatment efforts and the juvenile's response to such efforts."  The D.C. Circuit concluded, without explanation, that those terms are "entirely unrelated" to the juvenile's alleged violations of the law.  See In re Sealed Case, 893 F.2d at 369 n.12.  However, the plain language of those terms is broad enough to authorize the admission of evidence regarding almost any action, criminal or otherwise, the juvenile has taken.  Congress left us no persuasive evidence that those terms were not meant to include a juvenile's alleged violations of the law.  Furthermore, admitting evidence under those factors does not raise a due process issue because a juvenile is free to contest any evidence offered.  See In re Sealed Case, 893 F.2d at 369 n.12.  With the lack of persuasive legislative history and the elimination of the due process concern, we cannot interpret the language as restrictively as LWO urges.  Instead, we hold that section 5032 leaves to the sound discretion of the district court the decision to admit evidence of other incidents and

behavior, that may be alleged to be criminal or delinquent, as relevant to "the juvenile's present intellectual development and psychological maturity," "the age and social background of the juvenile," and "the nature of past treatment efforts and the juvenile's response to such efforts." The district court must make a determination that such incidents and behavior are in fact relevant to the statutory factors in the particular case.

We realize that we have drawn a distinction between the statutory factors, but the language of the statute requires it. When dealing with evidence of other incidents, behavior, and resulting charges, if any, a district court must consider the nature of the particular factor and precisely how the alleged incidents, behavior, charges, and surrounding circumstances are relevant to that factor. The district judge should articulate the reasons for considering such evidence, and the manner in which such evidence bears upon the analysis of the factor.

The case at hand is illustrative. In assessing LWO's social background, the district judge found that LWO's mother was not "there for him" when he allegedly committed two assaults. The court did not, however, articulate the relationship between LWO's earlier incidents and behavior, and the factor under consideration. Furthermore, in assessing LWO's juvenile delinquency record, the district court erroneously relied on the evidence of the alleged assaults. Considering the assaults as part of LWO's juvenile record, and therefore solely for their criminal nature, was highly prejudicial particularly because of the alleged use of dangerous weapons (a shovel and a handgun) and the alleged identity of particular victims (tribal officers and LWO's girlfriend). With the exception of the alleged assaults and the spouse abuse conviction, LWO's prior delinquency record consists mainly of relatively minor offenses. Before the district court can make a fair "interest of justice" determination, it must consider the proper juvenile delinquency record, excluding the incident for which there was no charge and the incident for which there was a charge but no conviction. Thus, a remand is necessary, and we need not address LWO's claim that the district court

abused its discretion in determining that a transfer of his case to adult status was in the interest of justice.

In conclusion, it is erroneous for a district court to consider evidence of incidents or behavior for which there has been no charge or a charge but no conviction when assessing a juvenile's delinquency record pursuant to section 5032. Such evidence may be considered in analyzing the other three factors as we discussed above. Accordingly, we remand for proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.