**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 13 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

# UNITED STATES COURT OF APPEALS
# TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ANTHONY Y. (a juvenile),

    Defendant-Appellant,

No. 98-2028

---

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CR-96-748 JP)

---

Phillip P. Medrano, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

Louis E. Valencia, Assistant United States Attorney (John J. Kelly, United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before **SEYMOUR**, Chief Judge, **BALDOCK** and **BRISCOE**, Circuit Judges.

---

**SEYMOUR**, Chief Judge.

At issue in this interlocutory appeal is whether the district court acted within its discretion in transferring Anthony Y., a Navajo juvenile charged with murder, to adult status. Anthony Y. first asserts the government did not adequately establish the failure of past treatment efforts nor the absence of appropriate treatment centers. Second, he contends the district court erred by considering acts other than his adjudicated offenses when evaluating his juvenile record. Finally, he claims the district court erred in finding that his social background weighed in favor of transfer, and that he played a major leadership role in the offense. We have jurisdiction of the district court's interlocutory order under the collateral order doctrine of *Cohen v. Beneficial Indust. Loan Corp.*, 337 U.S. 541 (1949). *See United States v. Angelo D.*, 88 F.3d 856, 857-59 (10th Cir. 1996). For the reasons set out below, we affirm.

## I.

Late in the evening of December 11, 1996, Anthony Y. suggested to his friend Severiano B. that they "jack" (beat up and possibly rob) someone.[1]

---

[1] When determining whether to transfer a juvenile to adult status, "the court may assume the truth of the government's allegations regarding the defendant's commission of the crime." *United States v. Leon, D.M.*, 132 F.3d 583, 598-90 (10th Cir. 1997).

Severiano agreed and the two left his house with a weightlifting bar, a baseball bat, and a gun. At some point that night, they drank at least a quart of malt liquor supplied by Anthony and smoked marijuana. Later that night, the boys caught a ride to U.S. highway 666 where they were dropped off. They walked along the highway until they came across the truck of Gary Wayne Adams, and his son, Gary Douglas Adams, who were transporting M&M/Mars products. Anthony Y. shot both men in the head, killing them. Anthony Y. and Severiano B. then dragged Gary Wayne Adams' body away from the truck. They rummaged through the truck and the victims' pockets, stealing about $20, a TV/VCR unit, a cellular phone, and a case of candy. Anthony Y. was arrested December 14, 1996; Severiano B. was arrested the following day. Anthony Y. was fifteen years and one month old at the time.

The government moved to transfer both boys to adult status. The district court held a hearing and made findings pursuant to 18 U.S.C. § 5032. The court decided "with reservations" that transferring Anthony Y. would be in the interest of justice; it found transferring Severiano B. would not be. Specifically, the district court found that Anthony Y.'s unstable and unsupportive background, his role in the horrific murders, and his previous history of violent behavior tipped the balance in favor of adult status.

## II.

The purpose of the federal juvenile delinquency process "is to remove juveniles from the ordinary criminal process in order to avoid the stigma of a prior criminal conviction and to encourage treatment and rehabilitation." *United States v. Brian N.*, 900 F.2d 218, 220 (10th Cir. 1990). The district court must balance these important interests against the need to protect the public from dangerous individuals. *See United States v. Doe*, 94 F.3d 532, 536 (9th Cir. 1996); *United States v. Juvenile Male # 1*, 47 F.3d 68, 71 (2d Cir. 1995); *United States v. One Juvenile Male*, 40 F.3d 841, 844 (6th Cir. 1994). "Juvenile adjudication is presumed appropriate unless the government establishes that prosecution as an adult is warranted." *Juvenile Male # 1*, 47 F.3d at 71; *see also United States v. Leon, D. M.*, 132 F.3d 583, 589 (10th Cir. 1997); *United States v. Nelson*, 68 F.3d 583, 588 (2d Cir. 1995).

Congress delineated six factors to guide the district court in determining whether transfer to adult status would be "in the interest of justice":

> [1] the age and social background of the juvenile; [2] the nature of the alleged offense; [3] the extent and nature of the juvenile's prior delinquency record; [4] the juvenile's present intellectual development and psychological maturity; [5] the nature of past treatment efforts and the juvenile's response to such efforts; [6] the availability of programs designed to treat the juvenile's behavioral problems.

18 U.S.C. § 5032. The district court must consider and make findings as to each

-4-

factor.  *Id.*  We review the decision to transfer for an abuse of discretion.  *See*

*Leon, D.M.*, 132 F.3d at 590.


**A.**     **Past Treatment Efforts and Availability of Appropriate Programs**

Anthony Y. argues that the district court abused its discretion by finding

that the government and defense experts who testified about past and future

treatment "cancel[ed] out one another."  Aplt. Br. at 40.  He asserts the district

court must make findings as to each factor and abdicated this responsibility here.

Furthermore, because the district court failed to find that these two factors

supported a transfer to adult status, Anthony Y. argues the government failed to

carry its burden of persuasion on the transfer issue.

Section 5032 mandates that the district court consider and make findings as

to each of the six statutory factors.  In addition, the government must present

evidence on each factor.  *See United States v. M.H.*, 901 F. Supp. 1211, 1213 (E.D.

Tex. 1995) ("Failure of the government to address any factor leads to a denial of

the transfer request."); *United States v. A.J.M.*, 685 F. Supp. 1192, 1192-93

(D.N.M. 1988).  However, the district court need not find that each factor weighs

in favor of transfer in order to grant the government's motion.  The court need not

even find a majority of factors weigh in favor of the prevailing party, as "it is not

required to give equal weight to each factor but 'may balance them as it deems

appropriate.'" *Leon, D.M.*, 132 F.3d at 589 (quoting *Juvenile Male # 1*, 47 F.3d at 71). Indeed, though the court must address each factor, it "is not required to state whether each specific factor favors or disfavors transfer." *Id.* The decision to transfer is a grave and often difficult one, and does not lend itself to simple mathematical formulas. *See United States v. Wilson*, 149 F.3d 610, 614 (7th Cir. 1998). Rather, the district court must balance the evidence before it, weighing each factor as it sees fit, to determine whether a transfer to adult status best serves "the interest of justice." 18 U.S.C. § 5032.

The district court found that the fifth factor, past treatment efforts and response to such efforts, and the sixth factor, availability of appropriate programs, neither favored nor disfavored transfer. Dr. Hill, the government's expert, and Dr. Enfield, the defense expert, disagreed about whether Anthony Y. had ever been given the opportunity to partake in an appropriate treatment program, and whether he could be rehabilitated in the proper setting. In its decision to transfer Anthony Y., the district court discussed the evidence regarding each factor. It described both experts as "credible," rec., vol. I, doc. 85 at 12, and did not find that one's opinion outweighed the other. Because of this, Anthony Y. argues that the district court improperly failed to make the statutorily mandated findings. We disagree.

The district court's opinion simply indicates it found the evidence on the fifth and sixth factors in equipoise, a decision well within its discretion. The

-6-

government thus did not meet its burden of convincing the court that the circumstances of past treatment and availability of treatment programs favored transfer to adult status. Because the district court engages in a balancing of all six factors, however, the government may still ultimately prevail even though it failed to a prove a particular factor warrants transfer.[2] *See, e.g.*, *Wilson*, 149 F.3d at 612-614; *One Juvenile Male*, 40 F.3d at 845-46. We hold the district court's findings on the fifth and sixth factor were within its discretion, and did not preclude its decision to transfer Anthony Y. to adult status.

**B.    Juvenile Record**

Anthony Y. next contends the district court erred in considering unadjudicated conduct under the third factor, the extent and nature of the juvenile's delinquency record. Anthony Y.'s juvenile delinquency record consisted of three adjudicated offenses: stealing a bicycle, carrying a sharpened screwdriver on school grounds, and creating a public nuisance by running around an apartment building using a can of hair spray as a torch. The district court looked at numerous other incidents of misbehavior in weighing the third factor, noting in its discussion of Anthony Y.'s record that he "frequently got into fights,

---

[2] Of course, if the evidence is in equipoise on six factors, the government would have failed to meet its overall burden and transfer would be inappropriate.

abused drugs, and missed school." Rec., vol. I, doc. 85 at 10. The court found in addition that Anthony destroyed neighborhood property, physically assaulted his counselor, fought with another teenager a day or two after committing the murders, and violated several rules while being detained on the instant charges.

Two circuits have addressed the meaning of a "juvenile's prior delinquency record" in section 5032. In *Wilson*, 149 F.3d 610, the Seventh Circuit concluded the phrase encompasses both arrests and convictions,[3] but it did not permit the government to offer evidence to prove the conduct underlying arrests that did not result in a conviction. *Id.* at 613. The Eighth Circuit adopted a narrower definition in *United States v. Juvenile LWO*, 160 F.3d 1179 (8th Cir. 1998), holding that under section 5032 a juvenile's delinquency record covers only prior convictions. *Id.* at 1183.

We need not decide whether to follow the Seventh or Eighth Circuit or the district court's broader approach. Even if we limited Anthony Y.'s prior delinquency to the three adjudicated offenses, the additional conduct considered by the district court was relevant to several of the other statutory factors, like "the

---

[3] Under federal law, a prosecution of a juvenile technically results in an adjudication of a status, not a criminal conviction. *See United States v. Brian N.*, 900 F.2d 218, 220 (10th Cir. 1990). We recognize this, and in using the term "conviction," "we simply mean a disposition of a charge in which there has been an adjudication or admission of behavior which violates penal law." *United States v. LWO*, 160 F.3d 1179, 1182 n.4 (10th Cir. 1998).

age and social background of the juvenile," "the juvenile's present intellectual development and psychological maturity," or "the nature of past treatment efforts and the juvenile's response to such efforts." *See Juvenile LWO*, 160 F.3d at 1183. "[T]he plain language of those terms is broad enough to authorize the admission of evidence regarding almost any action, criminal or otherwise, the juvenile has taken," as long as it is relevant. *Id.* For example, Anthony Y.'s assault of his counselor evidences his response to past treatment efforts. His violence towards others, substance abuse, and conduct while in custody for this offense reflect his level of psychological maturity. His truancy relates to his present intellectual development as well as his response to past treatment efforts, since he signed contracts with the Navajo family court and his parents in which he agreed to attend school. Because the district court may balance each factor as it deems appropriate, *Leon, D.M.*, 132 F.3d at 589, and because it only considered information relevant to the six statutory factors, we hold the district court did not err in considering unadjudicated conduct to evaluate whether to transfer Anthony Y. to adult status.

## C.    Social Background

We next address Anthony Y.'s assertion that the district court erred in finding his social background and his role in the murders weighed in favor of a transfer to adult status. The court found that Anthony Y.'s family background was

-9-

"unstable and unsupportive," rec., vol. I, doc. 85 at 9, citing the testimony of Anthony's parents and school principal. It then weighed this factor in favor of transfer, noting Dr. Roger Enfield's opinion that juveniles sometimes become recidivists because "they return to the same home environments in which they originally became law breakers." *Id.* Dr. Enfield, who opposed transfer, made this statement in order to explain that treatment facilities re-directing juvenile delinquents away from their home environments had significant success rates. Because of the context of Dr. Enfield's statement, Anthony Y. claims the court "misappropriated" this testimony. Aplt. Br. at 34. We are not persuaded. While the overall tenor of Dr. Enfield's testimony disfavored transfer, the district court could reasonably rely on that particular statement in finding that it would be more difficult to rehabilitate a child with an unsupportive family than a child with a stable, supportive one. Anthony Y. also argues that this finding could "cut both ways," Aplt. Br. at 33, because a juvenile from an unstable background might flourish in a rehabilitative setting. That certainly is a possibility. Under our deferential standard of review, however, we do not evaluate whether we would have made a different finding in the first instance, nor do we reverse adequately supported findings simply because the evidence is subject to multiple interpretations. *See Leon, D.M.*, 132 F.3d at 591. Rather, we decide whether the district court abused its discretion. *Id.* at 590. Because sufficient evidence

-10-

supported the district court's findings and conclusions regarding Anthony Y.'s social background, we hold that it acted within its discretion in concluding that this factor weighed in favor of transfer to adult status.

**D.     Role in the Offense**

Finally, Anthony argues the district court erred in finding he played a major role in the offense because the court did not find he supplied the gun. Conflicting evidence exists as to who supplied the gun, *compare* rec., vol. IV at 47 *with* rec., vol. IV at 60, 89-90, and Severiano B. took the gun home after the commission of the crime. Nevertheless, sufficient evidence supports the district court's finding that Anthony went to Severiano's home and enlisted him to "jack" someone, supplied the malt liquor they drank, and then shot both victims without provocation and without prompting or encouragement from Severiano. Given Anthony Y.'s conduct, including killing two people, the court's finding that "Anthony played a major leadership role" in the offense, rec., vol. I, doc. 85 at 10, is well-supported.

**III.**

Because the district court acted within its discretion, we **AFFIRM** its decision to transfer Anthony Y. to adult status.