**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 5 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

  Plaintiff-Appellee,

v.

MCQUADE Q. (a juvenile),

  Defendant-Appellant.

No. 04-2145

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. CR-03-2155-JP)**

Kyle T. Nayback, Assistant United States Attorney (David C. Iglesias, United States Attorney, with him on the briefs), Albuquerque, New Mexico, for Plaintiff-Appellee.

Alonzo J. Padilla, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

Before **EBEL**, **BALDOCK**, and **LUCERO**, Circuit Judges.

**BALDOCK**, Circuit Judge.

  The Government filed a sealed superceding information charging Defendant McQuade Q., a juvenile, with two counts of aggravated sexual abuse in violation of the Federal Juvenile Delinquency Act, 18 U.S.C. §§ 5031-5042. Count I

charged McQuade with forcibly raping a thirteen-year old girl when he was seventeen years old. See 18 U.S.C. §§ 2241(a), 2246(2)(A). Count II charged McQuade with forcibly raping an eleven-year old girl when he was sixteen years old. See id.[1]

The Government moved to proceed against McQuade as an adult under 18 U.S.C. § 5032. The district court held an evidentiary hearing and found that transferring McQuade to adult status would be "in the interest of justice." See 18 U.S.C. § 5032. The court specifically found that: (1) neither of McQuade's parents provided parental support or guidance, both drank heavily, and were neglectful; (2) the offense McQuade was charged with involved the forcible rape of different young girls and one offense was particularly violent; (3) McQuade has an extensive juvenile criminal history; (4) McQuade suffers from, among other things, a low IQ, extreme anti-social personality disorder, and may suffer from Fetal Alcohol Syndrome; (5) McQuade's treatment for his psychological problems has been minimal but his educational efforts and behavior have improved since his incarceration in the Santa Fe County Youth Detention Center (SFCYDC); and (6) although McQuade's behavior in the SFCYDC has improved,

---

[1] "When determining whether to transfer a juvenile to adult status, the court may assume the truth of the government's allegations regarding the defendant's commission of the crime." United States v. Anthony Y., 172 F.3d 1249, 1251 n.1 (10th Cir. 1999) (internal quotation omitted).

2

he has not shown any improvement with his extensive psychological problems.

The court further found that neither the SFCYDC nor any other juvenile facilities have the appropriate programs to treat McQuade's psychological problems. Instead, the court found that a federal correctional institution would have the best programs to treat McQuade. The court concluded "[i]t will be necessary to provide intensive, expert treatment of McQuade Q.'s psychological factors for a period that will extend beyond McQuade Q.'s twenty-first birthday." Accordingly, the court, after indicating "this to be a most difficult decision," granted the Government's motion to proceed against McQuade as an adult.

On appeal, McQuade argues the district court erred when it: (1) failed to give proper weight to McQuade's upbringing and failed to find the first four statutory factors under § 5032 weighed in favor of juvenile treatment and rehabilitation; (2) failed to recognize the significance of McQuade's educational and behavioral improvement at the SFCYDC; and (3) improperly focused on the unavailability of psychological therapy in juvenile treatment facilities. We have jurisdiction under the collateral order doctrine, see United States v. Angelo D., 88 F.3d 856, 857-58 (10th Cir. 1996), and review the district court's decision for an abuse of discretion. See United States v. Leon, D. M., 132 F.3d 583, 589-90 (10th Cir. 1997).

Our review of § 5032 transfer decisions is highly deferential. The

3

defendant bears "a heavy burden" in seeking to overturn the district court's decision. Id. at 590. "A district court abuses its discretion in deciding whether to transfer a juvenile to adult status when it fails to make the required factual findings or when its factual findings are clearly erroneous." Id. The district court's decision may not be overturned simply because an appellate court might have reached a different conclusion had it considered the matter in the first instance. Id. Applying this standard, and after carefully reviewing the record, we affirm.

I.

"The purpose of the federal juvenile delinquency process 'is to remove juveniles from the ordinary criminal process in order to avoid the stigma of a prior criminal conviction and to encourage treatment and rehabilitation.'" United States v. Anthony Y., 172 F.3d 1249, 1251-52 (10th Cir. 1999) (quoting United States v. Brian N., 900 F.2d 218, 220 (10th Cir. 1990)). The district court must balance this important interest against the need to protect the public from dangerous individuals. Id. Juvenile adjudication is presumed appropriate unless the government establishes that prosecution as an adult is warranted in the interest of justice. Id.; see also Leon, D. M., 132 F.3d at 589.

Section 5032 provides six factors to guide district courts in determining whether transfer to adult status is "in the interest of justice": (1) the age and

4

social background of the juvenile; (2) the nature of the alleged offense; (3) the extent and nature of the juvenile's prior delinquency record; (4) the juvenile's present intellectual development and psychological maturity; (5) the nature of past treatment efforts and the juvenile's response to such efforts; and (6) the availability of programs designed to treat the juvenile's behavioral problems. 18 U.S.C. § 5032. A district court must consider and make findings with respect to each factor. Id. The district court is not required, however, to give equal weight to each factor. Leon, D. M., 132 F.3d at 589. Instead, the court "may balance them as it deems appropriate." Id. (internal citation omitted). "Also, the court is not required to state whether each specific factor favors or disfavors transfer." Id.

## II.

In this case, McQuade asks us to re-weigh the six statutory factors such that we might reach a different result than the district court. We decline to do so. The district court carefully considered each of the factors listed in § 5032, and as the Government opines, "did exactly what the Juvenile Delinquency Act requires." The court balanced each of the factors and concluded they weighed in favor of McQuade's transfer to adult status. The court was not required to give particular weight to one factor over another nor was the court required "to state whether each specific factor favors or disfavors transfer." See id.

5

In examining each factor, the court first recognized that McQuade has suffered an unfortunate background and has spent "the majority of his upbringing . . . in foster care or in a school dormitory." The court found McQuade's mother provided no parental support and that his father "served as a bad adult example." The court then recognized that "[t]he lack of parental love and support has resulted in a number of McQuade Q.'s severe psychological problems." The record fully supports the court's findings.

When discussing the second and third factors, the court found the offense for which McQuade was charged involved "the forcible rape of different young girls" and one offense "was particularly violent and resulted in significant, multiple injuries to the girl." The court also throughly reviewed McQuade's prior delinquency record and found that he has been charged with numerous juvenile offenses. Although the court indicated most of McQuade's prior offenses were non-violent, McQuade has a history of regular fighting at school. Again, the record fully supports the court's findings.

Next, the court made explicit findings under the fourth factor involving McQuade's present intellectual development and psychological maturity. The record shows McQuade was diagnosed with Fetal Alcohol Syndrome at the age of six and testimony at the transfer hearing indicated that such a diagnosis may render McQuade "less amenable to treatment, especially in juvenile treatment

facilities." Further, relying upon the report and testimony of Dr. Samuel Roll, a clinical psychologist, the court found McQuade suffers from, among other things, "an extreme anti-social personality disorder, is unable to appreciate the wrongfulness and harmfulness of his actions, exhibits frequent loss of control of sexual and aggressive impulses, [and] has narcissistic tendencies."[2] Dr. Roll testified that juveniles suffering from narcissism are more difficult to treat than juveniles who do not exhibit narcissistic tendencies.

The record further supports the court's findings under the fifth statutory factor involving the nature of past treatment and McQuade's response to such treatment. Specifically, the court noted that efforts to treat McQuade's psychological problems have been minimal. The record shows McQuade briefly attended anger management and alcohol abuse counseling in the past but stopped attending for personal reasons. Although the court recognized McQuade's educational efforts have improved at the SFCYDC and McQuade "has not shown

---

[2] The Supreme Court recently noted in Roper v. Simmons, __ U.S. __, __, 125 S.Ct. 1183, 1197 (2005), that general rules of psychiatry prohibit psychiatrists "from diagnosing any patient under 18 as having antisocial personality disorder." The Court's dicta is irrelevant in this case for three reasons. First, Dr. Roll explicitly testified at the transfer hearing that the rules of psychiatry do not prohibit anything; rather, it "is a guideline for clinicians." Second, Dr. Roll testified that McQuade was never actually diagnosed with an anti-social personality disorder; instead, he simply possesses "all of the behavioral requirements, even though he is not 18." Lastly, McQuade, in his opening brief, admits he "suffers from severe anti-social personality disorder."

the pattern of misconduct that preceded his incarceration," McQuade's "incarceration at the [SFCYDC] has not corrected or improved his psychological problems, especially his extreme anti-social personality disorder." Dr. Roll testified that even after eight months of treatment at the SFCYDC, McQuade "still shows severe deficiencies" and that his "prognosis is very bad."

Lastly, the court found under the sixth factor that juvenile facilities are not equipped to handle McQuade's necessary long-term psychological treatment. Although McQuade argues the sixth factor only requires the unavailability of programs to treat a juvenile's "behavioral" problems rather than psychological problems, the district court logically concluded McQuade's psychological problems are directly related to his behavioral problems. Accordingly, the treatment of one over another would not facilitate McQuade's recovery. See Anthony Y, 172 F.3d at 1252-53 (indicating the sixth statutory factor simply addresses the availability of "treatment programs" in general and does not distinguish between "behavioral" or "psychological" treatment programs).

Further, the record supports the court's finding that juvenile facilities are not capable of handling McQuade's psychological treatment. Dr. Roll testified:

> I think this man who has suffered this much, including separation
> from his mother right at the age when you begin to develop a
> conscience at three years old, really is going to need long-term
> treatment. And I think he is going to need treatment by highly
> trained people. Usually, unfortunately, at juvenile centers we spend
> less on our juveniles than we do on the adults, we don't have people

8

who are well-trained, who have PhDs, who have long-term internships and post doctorates.

Dr. Roll continued and testified that McQuade will require treatment one to three times a week by a licensed psychologist for at least four to five years and juvenile facilities are simply not equipped to handle that need. The testimony of Dr. Elliott J. Rapaport, also a clinical psychologist, supports Dr. Roll's conclusions. Dr. Rapaport testified that juvenile facilities "don't have the kind of licensed psychologist on staff that would be required to engage in three-day-a-week intensive psychotherapy towards the end of changing personality." Accordingly, the court properly concluded, based upon the report and recommendation of Dr. Roll, that the interest of justice required the transfer of McQuade to adult status because federal correctional institutions have the best programs and staffing to treat McQuade.

## III.

The record establishes that the district court carefully considered each of the statutory factors and made a difficult decision as to how to weigh them. Even if the decision might not have been our own, in light of the deference we afford the district court, the court's decision must stand. Accordingly, we hold the district court did not abuse its discretion in granting the Government's motion to transfer McQuade to adult status.

AFFIRMED.